I please the court. My name is Cameron McCree and I represent the United States in this matter. And your honors, the question before this court is how much information is necessary for law enforcement to reasonably believe that a fugitive resides at his hideout when he's found there. The United States submits that the information on this case is sufficient to show on these facts that law enforcement reasonably believed that Mr. Thabit lived at the hideout where he was found on June 18th of 2019. Mr. Thabit was an absconder from probation and parole for approximately three months. And law enforcement was looking for him because his mother, who is where he was supposed to be residing, she reported that he was not residing at her home when he should have been. Your Honor, counsel, as an initial matter, you said reason to believe. Can you help me understand that standard? Is that more than reasonable suspicion? What's your position on the level of comfort that the officers have to have to believe that that is his residence? Your Honor, I believe that's an open question in this court. At the district court, we advocated that that should be considered as reasonable suspicion. On further research, we know that that question is more of an open question in the circuits. And so for purposes of our briefing, we have focused on this as if at most was as necessary as probable cause. And we believe that the facts of this case establish probable cause to show that law enforcement should believe that he is living at this residence. Specifically, there was a reliable source who provided information to Mr. Kapsch. Excuse me, counsel, but before you get into the facts, I just have a follow-up question on your standard. So do I understand you to be saying that when you argue reason to believe, are you equating that with probable cause? Your Honor, I believe that the facts of this case are such that this court doesn't have to resolve that specific issue today. That issue mainly comes up whenever law enforcement has an arrest warrant and they're going in the home based on the warrant itself. This case, we're using that line of cases as an analogous line of cases for the reason to believe standard. But don't we at least have to have a base? We may not have to reach what's the highest standard, but there must be some standard below which a search would not be justified. I would agree, Your Honor. I would submit that the facts of this case establish probable cause. And because they do, this court doesn't have to determine whether it's probable cause or something lesser. Because of the facts of this case do establish that there's probable cause to believe that Mr. Thabit was living at 108 South Martin. And would you outline what those facts are? Yes, Your Honor. The reason why we believe that there's probable cause to believe that is that Mr. Thabit was a fugitive. So when we're speaking about the totality of the circumstances, we're looking at that. That is a major fact to consider is that Mr. Thabit's whereabouts were unknown for three months. He had to be living somewhere. A credible source told law enforcement one week before the search that Mr. Thabit was staying with his girlfriend. That source was a reliable source as found by the district court. The district court also found that the tip that that reliable source gave was credible. And this court has held that a reliable informant who provides a credible tip, that equates to probable cause. In the circumstances What case is that? Your Honor, I believe that that is, that's come up in multiple cases. It arises from, I believe, an Illinois v. Gates, which is a Supreme Court case. But there are also just two lines of cases concerning credibility of informant information. One line concerns anonymous informants, and the other line of cases concerns known informants. So I'm wondering if that might be a non sequitur in terms of the reasoning. It might be probable cause to believe he was present, but is it probable cause that it's his residence? Yes, Your Honor. I would submit that the, this court has also held whenever there's corroboration is the concern. The corroboration doesn't have to be on every material point. It could be on a minor detail of what's going on. And we're speaking about an informant who said that Mr. Thabit was living with his girlfriend, and that was one week later. So that's also important, is that... Living with or staying with? The district court found that the tip was that he was staying with his girlfriend. But I would submit that that's a semantic difference without a distinction. First, colloquially speaking, staying with is a phrase that people often use to mean living with. For example, with Mr. Thabit's mother, her tip to, her information to law enforcement was that Mr. Thabit was not staying with her. And what she meant was he was not living here. He had not been there for weeks, and that he was not there, and she didn't know where he was. And that's why the absconder warrant issued. If she only meant that he wasn't here right now or he wasn't here last night, that would be something different. She was saying he is not living here, and I don't know where he is. And so... As I understood the district court's findings, is it wasn't focused quite as much on the staying versus the living, but sort of the district court concluded that the officer himself just didn't know what that meant. And so he said he just didn't, he wasn't sure. He didn't know where Mr. Thabit was living. And so can you address that part of the district court's ruling that he believed the officer himself just didn't know? Yes, Your Honor. I believe the ruling on that issue was, there were two things. One was the staying versus living issue. When Officer Martin testified at the suppression hearing, he initially said that the tip was that, the source said that Mr. Thabit was staying with his girlfriend. And I asked him to clarify if he meant that the source said that she, that the source was saying that Mr. Thabit was living there. And he clarified immediately that's what he meant. The district court, when finding the facts, found more credible what he initially said without clarification, which was that the tip, by its language, was that he was staying there. But I would submit this court can use those facts and address the district court's analysis. What the district court inferred from that, those factual findings, was that the source was saying that Mr. Thabit was only staying there temporarily because the district court believed that staying meant that he was only there for a short period of time. But we would note that the dictionary definition of what it means to stay at a place includes the fact that you take up residence there, and an individual can have more than one residence. Mr. Thabit was supposed to be residing with his mother, but he wasn't. And we would, so we would note that the factual finding is that there was information that Mr. Thabit was staying there. And also, if this court finds that probable cause is what's required, not even probable cause requires absolute certainty. And what Officer Martin was saying is that he didn't know for certain that Mr. Thabit was living at this place until he was inside the residence. But he doesn't have to have absolute certainty. The fact that... Does it matter that the officers had not, or as I understand the record, no one had checked with his mother for three months? You've represented that he hadn't been staying with his mother for the last three months. But as I understand the record, it was three months ago they said that his mother said he hasn't been staying here, but there was no follow-up the following three months. Do I understand the record correctly? I believe that's correct, but in addition to not staying with his mother, he's also not reporting to his officer. And so he was in absconder status, and that's why a warrant had issued for him. And the reason why that warrant was still active and the Fugitive Task Force was looking for him was because he had not reported it to the officer and he was not with his mother. And so not only was he not there for three months... Can I follow up? How did they know he wasn't with his mother once the absconder warrant was issued? I acknowledge that they didn't talk to her in March and they didn't talk to her in June, but by that point they're serving an arrest warrant looking for him and they're out on this operation trying to find him. And so the fact that this tip came up was not something that the Fugitive Task Force had. It was that they were doing an operation the morning of June 18th looking for Mr. Thabit and that one of the members of the Fugitive Task Force realized he had information a week prior, separate and apart from the Fugitive Task Force duties, that said that Mr. Thabit was staying with his girlfriend. Does it matter, counsel, that the person who actually owned the home, Ms. Fraze, was present and said he was not living there? Your Honor, I don't know that... The records suggest that she told law enforcement that he was not living there. I think she may have said that this was not... He didn't own the home. I don't know that the record said that she told law enforcement at the time that he was not living there. So I thought the record said that in the month prior she claimed he had only stayed there a couple of times and maybe that was after the fact. Your Honor, I know at the discretion hearing she testified that he stayed there only a couple of times, but I'm not sure she testified that that's what she told law enforcement at the time that they came there to arrest Mr. Thabit and conduct the search. And so, Your Honor, I would submit that law enforcement, they have a reason to believe that he lives there and because this source is reliable and credible, that is a strong reason to believe that Mr. Thabit's living there. But the fact that he is there one week after a source is saying that he was there and it's a weekday. I noted in my brief, I mentioned that it was a Wednesday, but it was actually a Tuesday. But my point still remains that it's a weekday around noon when Mr. Thabit was found at this particular location where a reliable source gave a credible tip that he was actually staying there, which this court should interpret to me that he was living there. And I see that I'm into my rebuttal time, and unless there are further questions, I would ask to reserve the balance of my time. Thank you, Mr. McCree. Mr. Kizer. May it please the Court. My name is Michael Kizer. I'm an attorney with the Lassiter and Cassinelli firm in Little Rock, Arkansas, and I represent Apolli Justin Thabit. Presence is not residence. A search waiver does not give police officers carte blanche to search any place that a parolee may happen to be physically located. But that is exactly how the government is asking this court to interpret it. What about the government's argument that the defendant's presence there was understood to be a likelihood based on a tip and knowledge that he was not staying where he had been and that he might be staying there? How does that play into an analysis? Judge Smith, I think the court's answered its own question with the word might, that he might be staying there. The officers, when asked if they had knowledge that he was residing there, said they did not know. And even after entering the home, stated it was still undecisive to them. So all they had was a bare bones tip from a CI that was not corroborated in any way and then the fact of my client's presence leaving the residence. Not indicative of residence whatsoever. So that was all the information that officers had and it's our position that that was not enough under either standard. It appears the government is conceding that the appropriate standard is probable cause. Well, counsel, I think all they're saying is that if probable cause is shown here, we don't have to reach that difficult issue. Yes, Your Honor. Well, we do agree that under either standard, we do agree that under either standard, the answer is the same and that it is what the district court found. Counsel, you've already addressed this somewhat, but I'd like to have you go into more detail if you could. Why wasn't the information that was possessed by law enforcement here sufficient to show probable cause? Yes, sir. They had an informant. It turned out he was actually there where the informant said he would be. The mother said he's not staying here anymore. Why isn't that enough for probable cause? So we looked at the case law including that cited by the United States, Judge Graz, and there just is not enough for corroboration. The case law cited by the United States points to several other things officers have done in other cases and could have done but chose not to do in this case, such as surveilling the residence, such as checking utility or maintenance records, such as seeing if my client had a key, which he did not. So there were no other factors other than the bare bones tip and the fact of him leaving the residence as they approached. And it's our position that under the case law, that is not sufficient to show proof of residence under either standard. My client had not used... Proof of residence is just probable cause. Thank you, sir. And there was no... Counselor, are there many cases or have you found many cases that address this very issue of the likelihood that someone's... The likelihood that a particular location is someone's residence in this context of a consent to search through the probation terms? Yes. Judge Kelly, the court actually, the district court prior to the suppression hearing in this case entered an order noting it found the appropriate standard for determination of whether a residence was someone's residence for purpose of the waiver was reasonable suspicion. And in that order, it cited the United States v. Alexander case, another case that had come before that court in the Eastern District of Arkansas. And that case compares very favorably to this case. In that case, Mr. Alexander had previously used the listed address as his listed address in a police report. His mother verified to police on the scene prior to their entry that he was, in fact, residing there. He was on a utility bill. So the other cases on point compare very favorably to our case where officers showed up, arrested my client validly, and based on their testimony, were going to search no matter what. And as this court can see from the video exhibits that were entered, they were still questioning the legality of their entry as they were entering, exiting, and reentering the house. The marshals were on the phone to an attorney with the Arkansas Department of Corrections, our parole division, asking if the waiver followed Mr. Thabit to any place he might be. And as this court knows, that is not correct. So counsel, the district court applied a standard of reasonable suspicion, correct? Yes, sir. Now the government's arguing that their proof was sufficient to meet probable cause. And I take it you believe that is clearly not the case, but you're also taking the position it doesn't even reach what the district court used, which is reasonable suspicion. Yes, sir. What's the minimum you think of proof that's needed to establish reasonable suspicion? Well, first off, something more than in this case. But they would need to corroborate something that my client was residing at the place rather than physically located there. Mere presence at a place is not sufficient. If so... Can it tell them the difference between the meeting and staying and residing? Potentially, but that was not the basis for the district court's finding here. The district court found not the semantic distinction, but the confidence that the witness had in stating his knowledge about where my client lived. Essentially, this is a credibility challenge by the United States regarding the district court's finding that Officer, I believe Martin, was less credible in his initial testimony than his... Excuse me, was more credible in his initial testimony than his later, shored up, much more certain testimony. I would remind the court that this analysis is restricted to what officers knew at the time of their initial entry into the home. And so, the government's position that Thabit's belongings being inside of the home, it's not relevant in this calculation. As can be seen from the testimony and from the videos, officers immediately went inside this non-parolee's home. They assumed that because Thabit was physically there, they could search the residence pursuant to his waiver. They were wrong. Presence alone is not residence. Excuse me. The government has really failed to challenge our claim that the district court actually had an alternative basis for its suppression under the Arkansas statute 1693-106 based on the perfunctory nature, the unreasonable nature of the search. The failure to challenge this alternative basis of suppression, this court should summarily affirm. And I would point out the government relies on several cases in its briefing and in the reply brief points to the Oliver case. But the Oliver case is an automobile exception case. It involved the search of a car rather than a private residence as here. And it's very distinguishable. It ignores the key constitutional protections that are different in a residence as compared to a car. But officers actually corroborated the informant's information in that case prior to making contact. They did not do so here. Some of the cases cited by the government point to speaking with neighbors, checking utility records. None of that occurred here. The officers even candidly said there's more here than a mere hunch. Excuse me. Wouldn't you say that there's more here than a mere hunch, which has been shown to be less than reasonable suspicion? Perhaps a little more than a mere hunch, but it does not rise to either standard of reasonable suspicion or probable cause. I'll give it to the court. It's a little more than a mere hunch. In its argument just now, the United States cited Illinois as the gates, but nothing in that case supports their position. That I believe the quote the government was referring to was, likewise, if an unquestionably honest citizen comes forward with a report of criminal activity, which if fabricated would subject him to criminal liability, we have found rigorous scrutiny on the basis of his knowledge unnecessary. That's not what happened here. This is not someone who, if fabricated, would be subject to criminal liability. The officer made clear he did not record the tip. The tip was unsolicited. He was not sure exactly how the tip was made. Back to Illinois v. Gates, conversely, even if we entertain some doubt as to an informant's motive, his explicit and detailed description of alleged wrongdoing, along with the statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case. The tip here had no firsthand knowledge, no predictive knowledge, nothing specific other than the general allegation that my client was at a place and was allegedly engaged in drug dealing. The Fourth Amendment is personal. You do need standing to make a challenge. But the United States' position that looking to the effect that such rulings may have on courts often look to policy in making these rulings. In the cases we cited showing that probable cause is the correct standard, the courts pointed to the effect on third parties such as Ms. Frase. And this case offers a really prime example of why we need a probable cause standard to protect those rights of the people who are helping our parolees reintegrate into society. Counsel, it's my understanding that one circuit has held that probable cause is the correct standard, but that no circuit has held that reasonable suspicion is the correct standard. Is that right? And the rest have not decided the issue? Your Honor, I believe we're up to two on PC. But yes, we do not have any unreasonable suspicion. More than a tip about location and presence at a home is required to support even a reasonable suspicion of residence and trigger a parolee's search waiver. An uncorroborated tip alone cannot give rise to even reasonable suspicion to justify a warrantless intrusion into a non-parolee's home simply because a parolee was arrested near that home. I see that I have concluded my argument. If the Court has any more questions. I see none. Thank you. Thank you, Mr. Connolly. I'll reserve the remainder of my time. All right. It's fair to say that Mr. Thabit's attorney suggests that the United States is challenging the credibility findings of the District Court. That's not the case. The United States accepts the facts as found by the District Court. The District Court at the suppression hearing, it explained its ruling as saying that it's fair to say that the District Court was accepting the facts as presented by law enforcement, except with regard to the staying versus living issue and also the idea of what they took from those facts based on the effect of hindsight. And so the District Court didn't have concerns about the CI being credible, the tip being credible. There were no issues about Mr. Thabit being a fugitive. There were no issues about Mr. Thabit coming out of this house when law enforcement came up. He wasn't just arrested close to this house. He was coming out of the house on a weekday around noon, a week after a credible source gave a credible tip that he was living there. We note that there's some concern about whether a case is about probable cause in the context of a home search or in the context of a vehicle search, but probable cause is probable cause. Whether that's for an indictment, whether that's for the issuance of a warrant or for a warrantless search, the standard of probable cause does not change. Counsel, in that regard, I think the tip also said that Ms. Frase was selling drugs out of that residence. Was there probable cause to search the residence for her activity? Your Honor, if there were, that's not been a basis the United States has sought to justify the search on, and so I don't know that we can do that at this stage. It seems to me that's a little different thing than probable cause for residence. Yes, Your Honor, it would be different, but there is information, and I believe the information that was presented at the suppression hearing was that Mr. Thabit was selling drugs from that residence, and so there would be concerns about the things that could be found inside, but our focus has been, for the purposes of this appeal, on the search waiver. Your Honor, on the issue of why not sufficient, I believe it's fair to ask why is the facts in this case not sufficient to establish probable cause, and the issue was that there was no cooperation. Again, there's this conflating of the two lines of cases about what's required to establish probable cause. I believe another case is 295F3 880, which is an Eighth Circuit case from 2002 that speaks about the fact that you can have two different ways of establishing probable cause with regard to an informant. When you have an anonymous individual, there are concerns about how credible is this person and the information that they're providing, but when someone is known, the question is do they have a track record of providing credible information? This particular source did, because information was essential towards establishing a conviction of another individual, and so the district court was well within its rights to find that that person was reliable because of their track record of giving information in the past. I believe there are some reference to the fact that law enforcement was on the phone with a probation lawyer at the time they were going in. That's not true. The facts were that Officer Burroughs testified that there was a call before they went in. There's a ring video where he hears himself asking about whether they were good to go. Officer Burroughs was not the one who made the call to the lawyer. He was asking the person who did call the lawyer, what did the lawyer say? That call was not happening on that video. Officer Burroughs testified that it happened before. That entry was him making sure that the lawyer said that they were okay. This was not someone being flippant. They were being careful. Here law enforcement was doing what the Fourth Amendment demands. They were being reasonable. They were taking precautions. They had facts to believe that Mr. Thabit was living there. Mr. Thabit was trying to defeat his search waiver by leaving the home where he was supposed to be. Those efforts should not be rewarded. Mr. Thabit was residing there, law enforcement reason to believe it, and they were reasonable to search. So we would ask that this Court reverse the order suppressing the evidence in this case. Thank you. Thank you Mr. McCree. Thank you also Mr. Kizer. The Court appreciates both counsel's argument to the Court this morning and supplementation of the briefing. We will take the case under advisory. Counsel may be excused.